IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    vs.                                                CR S-09-0015 EJG GGH

                                                     <u>ORDER</u>

JERRY ALBERT POOL,                      Judge: Gregory G. Hollows

_____/

I. <u>Introduction</u>

         Defendant on or about January 12, 2007, in Shasta County, in the Eastern District of California, received and possessed on his computer, visual depictions of minors engaged in sexually explicit conduct which were produced and transported in interstate commerce, in violation of 18 U.S.C. § 2252(a)(4)(b). On January 8, 2009, an indictment and arrest warrant were issued. On January 23, 2009, defendant appeared in court for arraignment and entered a plea of not guilty. Defendant has no prior federal criminal record. The court ordered defendant released on a $25,000 unsecured bond and to obey pre-trial conditions. Defendant consented to all the pre-trial conditions except that he must provide a DNA sample. The court stayed the DNA collection for both parties to brief the issue. Defendant challenges the constitutionality of amendments to the Bail Reform Act, 18 U.S.C. § 3142(b) and (c)(1)(A), which require DNA to

\\\\\

1

be provided for pre-trial release and the DNA Fingerprinting Act of 2005[1], 42 U.S.C. § 14135a,[2] which requires DNA testing of all arrestees.[3]

## II. Holding

This case, involving required DNA "identification" testing of non-convicted persons, is one of first impression for the federal courts. The court holds that after a judicial or grand jury determination of probable cause has been made for felony criminal charges against a defendant, no Fourth Amendment or other Constitutional violation is caused by a universal requirement that a charged defendant undergo a "swab test," or blood test when necessary, for the purposes of DNA analysis to be used solely for criminal law enforcement, identification purposes.

## III. Analysis

### DNA Amendments

The Bail Reform Act, 18 U.SC. § 3142(b) and (c)(1)(A), provide:

> (b) Release on personal recognizance or unsecured appearance bond. (1) The judicial officer shall order the pretrial release of the person on personal recognizance, or upon execution of an unsecured appearance bond in an amount specified by the court, subject to the condition that the person not commit a Federal, State, or local crime during the period of release and subject to the condition that the person cooperate in the collection of a DNA sample from the person if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000 (42 U.S.C. 14135a), unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other

---

[1] This act is also referred to as the Violence Against Women and Department of Justice Reauthorization Act of 2005.

[2] In 2000, Congress enacted the DNA Analysis Backlog Elimination Act which required DNA samples be taken from individuals in custody, on probation or on supervised release after being convicted of qualifying federal offenses. The scope of qualifying offenses was increased in 2001 under the USA Patriot Act, and extended to any felony pursuant to the Justice for All Act of 2004. It was the DNA Fingerprinting Act of 2005, that extended the act to all persons arrested or detained. Pub. L. No. 109-162 §1004. Section 155 of the Adam Walsh Child Protection and Safety Act of 2006 also extended the scope of testing to all arrestees. PL 109-248.

[3] Defendant is a pre-trial releasee, but assumes the government will rely on both acts to obtain the DNA sample.

| | |
|---|---|
| 1 | person or the community. |
| 2 | (c) Release on conditions. (1) If the judicial officer determines that the release |
| 3 | described in subsection (b) of this section will not reasonably assure the appearance of the person as required or will endanger the safety of any other |
| 4 | person or the community, such judicial officer shall order the pretrial release of the person-- |
| 5 | (A) subject to the condition that the person not commit a Federal, State, or local |
| 6 | crime during the period of release and subject to the condition that the person cooperate in the collection of a DNA sample from the person if the collection of |
| 7 | such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000 (42 U.S.C. 14135a). |

An amendment to the DNA Fingerprinting Act, 42 U.S.C. § 14135a, that took effect in January 2006, provides, "The Attorney General may, as prescribed by the Attorney General in regulation, collect DNA samples from individuals who are arrested, facing charges, or convicted or from non-United States persons who are detained under the authority of the United States." Id.

After a DNA sample is collected, it is provided to the Director of the Federal Bureau of Investigation (FBI). 42 U.S.C. § 14135a(b). The FBI Director then analyzes the DNA sample and includes the results in the Combined DNA Index System (CODIS), a FBI-created, national database that catalogues DNA profiles from numerous sources, including federal and state convicts, persons who have been charged in an indictment or information with a crime, DNA samples recovered from crime scenes, and from relatives of missing persons. 42 U.S.C. § 14132(a). CODIS "allows State and local forensics laboratories to exchange and compare DNA profiles electronically in an attempt to link evidence from crime scenes for which there are no suspects to DNA samples of convicted offenders on file in the system." H.R. Rep. 106-900(I), at 8 (2000).

The Attorney General issued regulations regarding the practical implementation of taking DNA samples from an arrestee. Rules and Regulations, Department of Justice, 28 CFR Part 28, 73 FR 74932, 2008 WL 5155929. The regulations provide:

\\\\\

> The rule allows DNA samples generally to be collected, along with a subject's fingerprints, as part of the identification process. As discussed above, the uses of DNA for law enforcement identification purposes are similar in general character to the uses of fingerprints, and these uses will be greatly enhanced as a practical matter if DNA is collected regularly in addition to fingerprints. Law enforcement agencies routinely collect fingerprints from individuals whom they arrest. See Anderson, 650 S.E.2d at 706 ("Fingerprinting an arrested suspect has long been considered a part of the routine booking process."); Kincade, 379 F.3d at 836 n.31 ("[E]veryday 'booking' procedures routinely require even the merely accused to provide fingerprint identification, regardless of whether investigation of the crime involves fingerprint evidence." (citation and quotation omitted)); Jones, 962 F.2d at 306 (noting "universal approbation of 'booking' procedures whether or not the proof of a particular suspect's crime will involve the use of fingerprint identification").

73 FR at 74934.

The Attorney General regulations also indicate that certain situations exist where collecting DNA will not be appropriate.

> The Department recognizes, however, that there may be some circumstances in which agencies collect fingerprints but in which the collection of DNA samples would not be warranted or feasible. For example, in relation to non-arrestees, DHS will not be required to collect DNA samples from aliens who are fingerprinted in processing for lawful admission to the United States, or from aliens from whom DNA-sample collection is otherwise not feasible because of operational exigencies or resource limitations. If any agency believes that such circumstances exist within its sphere of operations, the agency should bring these circumstances to the attention of the Department, and exceptions to the DNA-sample collection requirement may be allowed with the approval of the Attorney General.

73 FR at 74934.

Fourth Amendment

It is undisputed that the court sought to impose the DNA testing without engaging in a fact specific inquiry regarding if this condition was required to secure defendant's appearance in the future. It is also undisputed that the government seeks to impose DNA testing without obtaining a warrant. Defendant contends that the imposition of DNA testing to arrestees and pre-trial releasees is unconstitutional under the Fourth Amendment. The first argument posed involves the standard upon which the Fourth Amendment issue should be judged: "totality of the circumstances," or "special needs."

Pursuant to the Fourth Amendment,"[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. "The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.' " Pennsylvania v. Mimms, 434 U.S. 106, 108-09, 98 S.Ct. 330 (1977) (quoting Terry v. Ohio, 392 U.S. 1, 19, 88 S.Ct. 1868 (1968)). The Ninth Circuit has held, "the compulsory extraction of blood for DNA profiling unquestionably implicates the right to personal security embodied in the Fourth Amendment, and thus constitutes a 'search' within the meaning of the Constitution." United States v. Kincade, 379 F.3d 813, 821 n. 15 (9th Cir. 2004) (en banc).

However, every circuit to consider a Fourth Amendment challenge to the Justice for All Act of 2004, that extended DNA sampling to all felony convictions, has reached the same conclusion: collecting DNA from nonviolent felons as authorized by the Act does not violate the Fourth Amendment.

The majority of circuits adopt a "totality of the circumstances" framework. In United States v. Kincade, 379 F.3d 813 at 839-840, the Ninth Circuit held that mandatory blood draws for DNA testing of violent felons on supervised release does not violate the Fourth Amendment. In Rise v. Oregon, 59 F.3d 1556 (9th Cir. 1995), decided earlier, the Ninth Circuit held that an Oregon statute requiring convicted murderers and sex offenders to submit to blood testing for DNA analysis did not violate the Fourth Amendment. Rise, 59 F.3d at 1562. In Kincade, the Ninth Circuit reaffirmed Rise and held that "its reliance on a totality of the circumstances analysis to uphold compulsory DNA profiling of convicted offenders both comports with the Supreme Court's recent precedents and resolves this appeal in concert with the requirements of the Fourth Amendment." Kincade, 379 F.3d at 832. Applying the totality of the

circumstances test, in U.S. v. Kriesel, 508 F.3d 941 (9th Cir. 2007), the Ninth Circuit held that collecting DNA samples from nonviolent felons on supervised (conditioned) release does not violate the Fourth Amendment. See also, United States v. Weikert, 504 F.3d 1, 9-11 (1st Cir. 2007); Banks v. United States, 490 F.3d 1178, 1184 (10th Cir. 2007); United States v. Kraklio, 451 F.3d 922, 924 (8th Cir. 2006). The reasonableness of a search using the totality of the circumstances, "is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." Samson v. California, 547 U.S. 843, 848, 126 S.Ct. 2193, 2197 (2006).

In contrast, the Second and Seventh Circuits rely on the "special needs test." United States v. Amerson, 483 F.3d 73, 78 (2d Cir.2007); United States v. Hook, 471 F.3d 766, 772-74 (7th Cir. 2006). The Sixth Circuit has upheld the 2004 Act under both tests. United States v. Conley, 453 F.3d 674, 677-81 (6th Cir. 2006).

Defendant argues that the situation here involving non-convicted, but charged defendants is different. Therefore, the court must use the "special needs" test because unlike the Kincade line of cases, defendant has not been convicted and has a presumption of innocence. Defendant's Brief at 15. Defendant also contends that a general law enforcement need to take his DNA sample, the only reason that can apply here according to defendant, will not qualify as a "special need." As a result, defendant concludes the sampling is unconstitutional. Defendant's Brief at 15. Defendant points to the Supreme Court cases of Ferguson v. City of Charleston, 532 U.S. 67, 121 S.Ct. 1281 (2001) and City of Indianapolis v. Edmond, 531 U.S. 32, 121 S.Ct. 447 (2000). In Ferguson, the Supreme Court held that the use of a hospital's diagnostic test to obtain evidence of drug use of pregnant patients for law enforcement purposes was an unconstitutional search. In Edmond, the Supreme Court struck down a vehicle checkpoint where the primary purpose was to detect evidence of ordinary criminal wrongdoing, the trafficking of illegal drugs.

\\\\\

Defendant's argument fails.  The programs in Ferguson and Edmond are distinguishable from the instant case.  Those cases involved the search and seizure of motorists on a particular road or patients being admitted to a hospital.  Importantly, there had been no judicial involvement in finding that each specific person to be tested had been involved in criminal wrongdoing.  Rather, the government was simply fishing for substantive evidence with which to then go to a judge or otherwise commence criminal proceedings.  As such, neither the motorists nor the patients could be compelled to give substantive evidence absent special needs beyond the mere general need to enforce the criminal laws.[4]  The instant case is worlds apart from that in the above two cited cases – defendant is subject to DNA testing *after* a judicial finding or grand jury determination of probable cause.

The judicial or grand jury finding of probable cause within a criminal proceeding is a watershed event which should be viewed differently from mere pre-judicial involvement gathering of evidence.  After such a judicial finding, a defendant's liberty may be greatly restricted – even denied.  As part of his pre-trial release, defendant may be deprived of his very liberty; he can be subject to electronic monitoring; he may be ordered to obey a mandatory curfew.  Also, the court can order a defendant to refrain from traveling outside of the Eastern District of California without prior approval, not to possess a firearm and that he must reside at a location that is reviewed and approved by the Pretrial Services Officer.  In a pornography case he can be directed to not have any communications with a minor without the child's parent or guardian being present, cannot be found within 100 feet of a schoolyard, park, playground or other place frequented by children, cannot access the internet or possess a computer at his

---

[4] Suspicionless searches have been upheld where designed to serve "special needs, beyond the normal need for law enforcement."  See, e.g., Vernonia School Dist. 47J v. Acton, 515 U.S. 646, 115 S.Ct. 2386 (1995) (random drug testing of student-athletes); Treasury Employees v. Von Raab, 489 U.S. 656, 109 S.Ct. 1384 (1989) (drug tests for United States Customs Service employees seeking transfer or promotion to certain positions); Skinner v. Railway Labor Executives' Assn., 489 U.S. 602, 109 S.Ct. 1402 (1989) (drug and alcohol tests for railway employees involved in train accidents or found to be in violation of particular safety regulations).

residence without prior approval.[5] These conditions are almost identical to those conditions which can be imposed on a probationer or parolee for whom a DNA testing requirement has been found appropriate under a totality of the circumstances standard. The court finds that an up-front requirement for finding probable cause that the defendant has committed the charged felony places the issue much more closely with those cases utilizing a totality of the circumstances standard.[6]

In utilizing the totality of the circumstances, the decision to impose the DNA testing requirement on pre-trial detainees or releasees seems clearly warranted, if not compelling. An arrestee's identity obviously becomes a matter of legitimate state interest. See Kincade, 379 F.3d at 837; Jones v. Murray, 962 F.2d 302, 306-07 (4th Cir. 1992). An arrestee has a diminished expectation of privacy in his own identity. Probable cause has long been the standard which allowed an arrestee to be photographed, fingerprinted and otherwise be compelled to give information which can later be used for identification purposes. Napolitano v. United States, 340 F.2d 313, 314 (1st Cir. 1963).

There are similar compelling interests in the collection of DNA, as a law enforcement tool that is a technological progression from photographs and fingerprints. In upholding the sampling of DNA from supervised releasees, the Third Circuit described the vital governmental interests at stake,

> A DNA database promotes increased accuracy in the investigation and prosecution of criminal cases. It will aid in solving crimes when they occur in the future. Equally important, the DNA samples will help to exculpate individuals who are serving sentences of imprisonment for crimes they did not commit and

---

[5] It should be noted that several of these conditions are currently being challenged in other cases.

[6] The facts of the instant case is also distinguishable from the Ninth Circuit ruling in United States v. Scott, 450 F.3d 863 (9th Cir. 2006). In Scott, the Ninth Circuit, struck down a Nevada state law that conditioned pre-trial release on consenting to warrantless searches of the individuals home for drugs. The court held that the law did not pass a special needs or a totality of the circumstances test and emphasized the penultimate expectation of privacy in one's home. Id.

will help to eliminate individuals from suspect lists when crimes occur...The interest in accurate criminal investigations and prosecution is a compelling interest that the DNA Act can reasonably said to advance.

U.S. v. Sczubelek, 402 F.3d 175, 185 (3rd Cir. 2005).

Similarly, the Fourth Circuit assessed governmental interests against the minimal intrusion:

> It is a well recognized aspect of criminal conduct that the perpetrator will take unusual steps to conceal not only his conduct, but also his identity. Disguises used while committing a crime may be supplemented or replaced by changed names, and even changed physical features. Traditional methods of identification by photographs, historical records, and fingerprints often prove inadequate. The DNA, however, is claimed to be unique to each individual and cannot, within current scientific knowledge, be altered. The individuality of the DNA provides a dramatic new tool for the law enforcement effort to match suspects and criminal conduct. Even a suspect with altered physical features cannot escape the match that his DNA might make with a sample contained in a DNA bank, or left at the scene of a crime within samples of blood, skin, semen or hair follicles. The governmental justification for this form of identification, therefore, relies on no argument different in kind from that traditionally advanced for taking fingerprints and photographs, but with additional force because of the potentially greater precision of DNA sampling and matching methods.

Jones v. Murray, 962 F.2d at 307. See also Nicholas v. Goord, 430 F.3d 652, 671 (2nd Cir. 2005) (the intrusion of privacy effected by DNA sampling is similar to the intrusion and maintenance of fingerprint records). While these cases dealt with convicted felons, the rationale remains identical for the present situation involving pre-trial release.

In Anderson v. Commonwealth, 274 Va. 469 (2007), the Supreme Court of Virginia upheld a state statute that required every person arrested for the commission or attempted commission of a violent felony to have their DNA collected.[7] The court in Anderson analogized the taking of a DNA sample to the taking of fingerprints as part of the routine booking process following an arrest.

---

[7] Defendant cites, In the Matter of the Welfare of C.T.L., 722 N.W.2d 484 (Ct. App. Minn. 2006), where the Minnesota Court of Appeals invalidated a statute that authorized DNA sampling after a judge had found probable cause that the arrestee had committed a crime. This court finds that case unpersuasive and believes that a judicial or grand jury determination of probable cause is a significant event in the proceedings of case which can allow for DNA collection of a person on pre-trial release.

9

> [W]hen a suspect is arrested upon probable cause, his identification becomes a matter of legitimate state interest and he can hardly claim privacy in it. We accept this proposition because the identification of suspects is relevant not only to solving the crime for which the suspect is arrested, but also for maintaining a permanent record to solve other past and future crimes. This becomes readily apparent when we consider the universal approbation of "booking" procedures that are followed for every suspect arrested for a felony, whether or not the proof of a particular suspect's crime will involve the use of fingerprint identification. Jones, 962 F.2d at 306. Like fingerprinting, the "Fourth Amendment does not require an additional finding of individualized suspicion" before a DNA sample can be taken. Id. at 306-07.

Anderson, 274 Va. at 474-75 (quoting Jones v. Murray, 962 F.2d 302, 306 (4th Cir. 1992)). The Anderson court also held that:

> [T]he taking of a DNA sample by minimally intrusive means "is justified by the legitimate interest of the government in knowing for an absolute certainty the identity of the person arrested, in knowing whether he is wanted elsewhere, and in ensuring his identification in the event he flees prosecution." 3 Wayne R. LaFave, Search and Seizure § 5.3(c), at 168 (4th ed.2004).

Anderson, 274 Va. at 475-76.[8]

The court agrees that DNA sampling is analogous to taking fingerprints as part of the routine booking process upon arrest. As the Tenth Circuit noted, FBI's "CODIS operates much life an old-fashioned fingerprint database (albeit more efficiently)." Banks v. U.S., 490 F.3d 1178, 1193 (10th Cir. 2007).

Secondly, the invasiveness of DNA testing is minimal. The DNA can be taken by an oral swab, and even blood tests have been held to be a minimal intrusion. See Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 625, 109 S.Ct. 1402 (blood tests are commonplace, safe, and " 'do not constitute an unduly extensive imposition on an individual's privacy and bodily integrity.' "). See also United States v. Kriesel, supra, 508 F.3d at 948 ("Consequently, the additional privacy implications of a blood test collecting DNA, as opposed to a cheek swab...do not significantly alter our analysis."). Pursuant to 28 C.F.R. § 28.12(f)(1), DNA will be collected by buccal (oral) swabs or blood draws. There is no evidence that an oral

---

[8] The defendant in Anderson also relied on Ferguson and Edmond to argue for a "special needs" test to take a DNA sample. This argument did not persuade the Virginia Supreme Court.

swab is any more physically invasive than taking fingerprints.

The many courts that have addressed the issue of DNA testing have struggled with concerns regarding the safeguards in place for the DNA storage and the possibility of misuse. While fears of a "Big Brother" style government harassing or persecuting individuals based on genetic characteristics is always theoretically possible, that is not the purpose of the amendments before the court, nor is it at all likely. The court has reviewed the safeguards in the instant amendments and relies on these protections and the Department of Justice regulations to ensure that the DNA information will be used solely for law enforcement purposes.

The instant amendments serve only to utilize the collected DNA for identification purposes similar to fingerprints and photographs. The Attorney General regulations describe that the DNA will be taken during the identification process after the arrest. 73 FR at 74934. Currently, the extracted DNA consists mostly of "junk DNA," that was purposely selected as it contains DNA that is not currently associated with containing genetic traits such as physical and medical characteristics. Kincade, 379 F.3d at 818.

Regardless of the "junk" status of the DNA, and more importantly, the statute also contains privacy protections and imposes criminal and financial penalties for improper use of DNA samples. The statute provides:

> A person who knowingly discloses a sample or result described in subsection (a) of this section in any manner to any person not authorized to receive it, or obtains or uses, without authorization, such sample or result, shall be fined not more than $250,000, or imprisoned for a period of not more than one year. Each instance of disclosure, obtaining, or use shall constitute a separate offense under this subsection.

42 U.S.C. § 14135e(c).

The act also limits access to the DNA samples. DNA test results may only be disclosed to criminal justice agencies for law enforcement identification purposes, in judicial proceedings, for criminal defense purposes and if personally identifiable information is removed for population-statistics database, identification research, protocol development purposes and for

quality control purposes. 42 U.S.C. § 14133(b)(1)(A)-(C).

Defendant's argument that no data sequestration system is immune from abuse is no reason to disallow DNA identification sampling. The point is that such information cannot be used outside of the statute's permissible purpose on pain of criminal penalties. This sanction will deter the vast majority of persons who might otherwise take undue advantage of private information. The sanction will not absolutely deter everyone, but what sanction does? If defendant's argument were to hold sway, medical records could not be computerized lest someone be able to hack into the records; insurance companies would not be allowed access to such records for payment purposes to alleviate the potential for some errant employee to misuse this otherwise quasi-private information. Our modern technological society cannot function in an atmosphere of privacy paralysis occasioned by a parade of "what ifs."

The court observes that the arguments, fears and concerns regarding DNA collection are nearly identical to those expressed about fingerprinting more than seventy years ago in the 1932 Second Circuit case, United States v. Kelly, 55 F.2d 67 (2nd Cir. 1932). In Kelly, the court upheld the fingerprinting of an arrestee who sold a quart of gin during Prohibition. The court emphasized that the arrest was made upon probable cause and the important need of identifying the individual to determine previous convictions and to aid in apprehension in the future. Kelly, 55 F.2d at 68. The court held, "Any restraint of the person may be burdensome. But some burdens must be borne for the good of the community[...]The slight interference with the person involved in finger printing seems to us one which must be borne in the common interest." Id. at 68. The court went on:

> Finger printing seems to be no more than an extension of methods of identification long used in dealing with persons under arrest for real or supposed violations of the criminal laws. It is known to be a very certain means devised by modern science to reach the desired end, and has become especially important in a time when increased population and vast aggregations of people in urban centers have rendered the notoriety of the individual in the community no longer a ready means of identification.

Id. at 69.

The court believes that the same rationale described in 1932 holds true today. In viewing the totality of the circumstances surrounding the instant amendments, the court holds that after a judicial or grand jury determination of probable cause has been made for felony criminal charges against a defendant, no Fourth Amendment violation is caused by a universal requirement that a charged defendant in a felony case undergo a "swab test," or blood test when necessary, for the purposes of DNA analysis to be used solely for criminal law enforcement, identification purposes.

The undersigned emphasizes what this holding does not encompass. It does not authorize DNA sampling after citation or arrest for infractions or misdemeanors, as in these cases there will be no *judicial* finding of probable cause soon after the arrest or citation, or no *grand jury* finding before or after the arrest. See, Fed. R. Crim. P. 7(a). It does not authorize police officials to perform DNA sampling prior to a judicial finding of probable cause which must be made within 48 hours after arrest and detention. Again, it is the finding of probable cause on criminal charges which allows the court to set release conditions similar to those of probation and parole, which is the underpinning of the court's holding in this case. Whether DNA sampling could be extended to these situations is a matter reserved for a later day.

Fifth Amendment, Eighth Amendment, Separation of Powers and Commerce Clause

Defendant also alleges the mandatory DNA sampling of the Bail Reform Act, 18 U.S.C. § 3142(b) and (c)(1)(A) violates Fifth Amendment Due Process, the Eighth Amendment, the Separation of Powers and is also an unconstitutional extension of power under the Commerce Clause.

In analyzing the DNA sampling amendments the court is aware that many district courts are considering similar challenges to the Adam Walsh Child Protection and Safety Act of 2006 and the mandatory pre-trial conditions that establish electronic monitoring, a curfew and restrict an individual's movement from certain public places. See United States v. Smedley, 2009 WL 1086972 (E.D. Mo, April 22, 2009) (under procedural due process, the Adam Walsh

Act's amendments to the Bail Reform Act of 1984 are unconstitutional on their face); United States v. Merritt, 2009 WL 764554 (D.Neb. Mar. 20, 2009) (statute violates procedural due process under the Fifth Amendment); United States v. Rueb, 2009 WL 764552 (D.Neb. Mar. 20, 2009) (same); United States v. Arzberger, 592 F.Supp.2d 590 (S.D.N.Y. 2008) (statute violates procedural due process under the Fifth Amendment, but does not violate, on its face, the Excessive Bail Clause under the Eighth Amendment, or violate the separation of powers principle of the Constitution); United States v. Kennedy, 593 F.Supp.2d 1221 (W.D.Wash. 2008) (statute violates procedural due process under the Fifth Amendment, the Excessive Bail Clause under the Eighth Amendment, and the separation of powers principle of the Constitution); United States v. Torres, 566 F.Supp.2d 591 (W.D.Tex. 2008) (statute violates procedural due process under the Fifth Amendment and the Excessive Bail Clause under the Eighth Amendment); United States v. Vujnovich, No. 07-20126-01 CM DJW, 2007 WL 4125901 (D.Kan. Nov.20, 2007) (statute violates procedural due process under the Fifth Amendment, the Excessive Bail Clause under the Eighth Amendment, and the separation of powers principle of the Constitution); United States v. Crowell, No. 06-CR-291E(F), 2006 WL 3541736 (W.D.N.Y. Dec.7, 2006) (same). Only one case has upheld the provisions against a constitutional attack. United States v. Gardner, 523 F.Supp.2d 1025 (N.D.Cal. 2007) (statute does not violate procedural due process under the Fifth Amendment, the Excessive Bail Clause under the Eighth Amendment, or the separation of powers principle of the Constitution).

Many of the courts in the above cases found the mandatory conditions that establish a curfew and restrict an individual's movement from certain public places implicated a liberty interest by curtailing an individual's ability to freely move from one place to another. These courts found that the private interest was significant as an individual's conduct was subject to monitoring. The issue in the instant case is distinguishable from those above. The DNA is taken as part of the post-arrest, post-release booking procedure for identification purposes only, similar to fingerprints and photographs. As such, the liberty interest implicated is non-existent

when comparing other strictures of the Adam Walsh Act.  Providing a DNA sample does not restrict an individual's movement or impose an excessive bail condition.  The DNA sampling, unlike a curfew or travel restriction, is not a continuing imposition on one's activities in a pre-trial situation.  Nevertheless, the court will analyze each issue.

Fifth Amendment Procedural Due Process

Defendant contends that the mandatory DNA sampling is a violation of Fifth Amendment procedural due process.  Defendant argues that the mandatory nature of the sampling eliminates any independent judicial determination as to its necessity.

"The fundamental requirement of [procedural] due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187 (1965)).  "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." Carey v. Piphus, 435 U.S. 247, 259, 98 S.Ct. 1042 (1978).  "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593 (1972).  In resolving claims that an individuals procedural due process rights have been violated, three factors are considered:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335, 96 S.Ct. 893.

Several courts have rejected Fifth Amendment Due Process challenges to the DNA sampling of convicted felons.  The Ninth Circuit held in Rise v. Oregon, 59 F.3d 1556 (9th Cir. 1995), that, "the extraction of blood from an individual in a simple, medically acceptable manner, despite the individual's lack of an opportunity to object to the procedure, does not

implicate the Due Process Clause. Id., at 1563. See also, United States v. Hugs, 384 F.3d 762, 768-69 (9th Cir. 2004) (holding the condition of supervised release that requires DNA testing under the Act is not unconstitutionally vague and therefore meets procedural due-process requirements); Johnson v. Quander, 370 F.Supp.2d 79, 89-93 (D.D.C. 2005) (holding that DNA Act violates neither substantive nor procedural due process under the Fifth Amendment), aff'd, 440 F.3d 489, 503 (D.C.Cir. 2006) (concluding that Fifth Amendment challenge to DNA Act is "without merit and do[es] not warrant separate discussion").

Applying the factors set forth in Mathews, it is clear that defendant's claim fails. The court has already discussed at length the applicable private and government interests in the Fourth Amendment discussion. Defendant's privacy rights are diminished due to his status as an arrestee and the government interests are compelling.

The only factor that warrants additional discussion is the risk of erroneous deprivation. Defendant argues that there is a risk of erroneous deprivation as an arrestee is innocent until proven guilty and may be ultimately exonerated. There are procedures in place to have DNA expunged from the CODIS system in the event of an exoneration or dismissal of charges. 42 U.S.C. § 14132(d)(1)(A). The risk of an innocent person's DNA being included in CODIS is minimal. Due to the minimal nature of any alleged deprivation or private interest, a pre-trial detainee does not have a procedural due process right with respect to submitting a DNA sample.

Eighth Amendment

Defendant argues that collecting DNA as a mandatory condition of release violates the Eighth Amendment right to be released on conditions that are not excessive.

To find a violation of the Excessive Bail Clause, a court must find that the release conditions are excessive "in light of the perceived evil." United States v. Salerno, 481 U.S. 739, 754, 107 S.Ct. 2095 (1987). Bail and conditions of release must be "reasonably calculated to fulfill" the government's purpose. Stack v. Boyle, 342 U.S. 1, 5, 72 S.Ct. 1 (1951).

The court has already found under the Fourth Amendment that the collection of DNA was a minimal intrusion as related to the important government interest. The same analysis satisfies the Eighth Amendment as collecting DNA for identification is not excessive in light of the government's purpose. As the Supreme Court stated in Salerno, "we reject the proposition that the Eighth Amendment categorically prohibits the government from pursuing other admittedly compelling interests through regulation of pretrial release." Id., at 753, 107 S.Ct. 2095. To reiterate: the requirement to submit to a booking procedure type sampling does not mirror any other terms and condition of release which lasts throughout the pre-trial process. It is clear that an oral swab or blood test to confirm a pre-trial releasees identity prior to release is not excessive.

Separation of Powers

Defendant contends that the Bail Reform Act amendments violate the separation of powers by depriving the court of its role in determining release conditions and instead mandating DNA testing.

The Constitutional separation of powers doctrine prohibits Congress from encroaching upon the powers conferred to the federal judiciary. See Kilbourn v. Thompson, 103 U.S. 168, 191 (1880). The Supreme Court has identified a number of legislative encroachments which transgresses the separation of powers. See Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 115 S.Ct. 1447 (1995). Congress may not prescribe a rule of decision for the judiciary in cases without amending applicable law. See id., at 218, 115 S.Ct. 1447 (quoting United States v. Klein, 80 U.S. 128, 13 Wall. 128, 20 L.Ed. 519 (1871)). "Congress cannot vest review of the past decisions of Article III courts in officials of the Executive Branch." Plaut, 514 U.S. at 218, 115 S.Ct. 1447. Congress may not interfere with the power of the federal judiciary to decide cases by "command[ing] the federal courts to reopen final judgments." Id., at 219, 115 S.Ct. 1447.

\\\\\

However, "the Framers did not require-and indeed rejected-the notion that the Branches must be entirely separate and distinct." Mistretta v. U.S., 488 U.S. 361, 380, 109 S.Ct. 647 (1989). There are many instances where the responsibilities of the branches overlap. While criminal sentencing is a judicial function, Congress has played a large role in prescribing mandatory minimum sentences. See Chapman v. United States, 500 U.S. 453, 467, 111 S.Ct. 1919 (1991) (rejecting separation of powers challenge to mandatory minimum sentences). In U.S. v. Salerno, 481 U.S. 739, 107 S.Ct. 2095 (1987), the Supreme Court held that Congress may infringe on the judicial function of bail setting by declaring that defendants who meet certain criteria will not be entitled to bail at all. Id., at 755.

The Klein prohibition arises only when Congress has not amended prior law. See Plaut, 514 U.S. at 218, 115 S.Ct. 1447 ("Whatever the precise scope of Klein, however, later decisions have made clear that its prohibition does not take hold when Congress 'amend[s] applicable law,' "). The Ninth Circuit has held that separation of powers is violated where "Congress has impermissibly directed certain findings in pending litigation, without changing any underlying law." Gray v. First Winthrop Corp., 989 F.2d 1564, 1568 (9th Cir. 1993). In the instant case, Congress has amended the underlying law governing bail conditions and in no other way has usurped judicial functions.

Finally, not all Congressionally directed judicial "findings" qualify as directives of dispositive decision making subject to a separation of powers prohibition. Just looking to the Bail Reform Act itself, there exist several mandatory features within the Act prescribed by Congress which no one has ever contended violate the principle of separation of powers. See e.g., "During a continuance [of a detention hearing], such person *shall be detained*." 18 U.S.C. § 3142(f) (emphasis added); "The judicial officer *shall order* that a person who has been found guilty of an offense [specific offenses listed]... *be detained* [pending appeal]". Section 3143 (b)(2). (emphasis added). Defendant's argument that a booking type DNA sampling procedure violates the separation of power principles, a situation much less invasive than an actual

deprivation of liberty, utterly fails.

### Unconstitutional Extension of Power

Defendant also contends that the Commerce Clause does not authorize the collection of DNA from pre-trial releasees.[9]

The Ninth Circuit addressed this issue in a challenge to the collection of DNA from supervised releasees. United States v. Reynard, 473 F.3d 1008 (9th Cir. 2007). The court held that:

> Since the federal government has the authority, under the Commerce Clause, to denominate Reynard's conduct a federal offense, it has the power to incarcerate him and impose upon him the terms of his supervised release, including requiring him to submit a DNA sample under the DNA Act. There is no requirement that each individual term of his supervised release be independently authorized under the Commerce Clause.

Id., at 1022.

Similarly, the federal government's authority to impose the instant DNA requirement arises when an individual is arrested for a crime that Congress had the authority to identify as a federal offense. Defendant's claim fails.

## IV. Conclusion

The court holds that after a judicial or grand jury determination of probable cause has been made for felony criminal charges against a defendant, no Fourth Amendment or other Constitutional violation is caused by a universal requirement that a charged defendant in a felony case undergo a "swab test," or a blood test when necessary, for the purposes of DNA analysis to be used solely for criminal law enforcement, identification purposes.

\\\\\

\\\\\

---

[9] Defendant also argues that the instant amendments are meant to expand DNA collection from just federal offenders to all defendants, and persons convicted of any crime. Defendant's Brief at 30. The court will not address this claim as it reads the amendments to apply to federal offenders only.

Accordingly, IT IS HEREBY ORDERED that defendant submit to DNA collection.

DATED: May 27, 2009

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

ggh: ab
pool015.ord